1  LEO D. PLOTKIN, ESQ. (SBN 101893)
2  JOHN P. MERTENS (SBN 252762)
   LEVY, SMALL & LALLAS
3  A Partnership Including Professional Corporations
   815 Moraga Drive
4  Los Angeles, CA 90049
   Telephone: (310) 471-3000
5  Facsimile: (310) 471-7990
   Email:    lplotkin@lsl-la.com
6             jmertens@lsl-la.com
7
   Attorneys for Plaintiff
8  PNC BANK, NATIONAL ASSOCIATION,
   successor by merger to National City Bank
9
10
11            UNITED STATES DISTRICT COURT
12           CENTRAL DISTRICT OF CALIFORNIA
13                 SOUTHERN DIVISION
14

15 | PNC BANK, NATIONAL | Case No. SACV11-00737-JST(RNBx)
16 | ASSOCIATION, a national |
   | banking association, successor | **MEMORANDUM OF POINTS**
17 | by merger to National City Bank, | **AND AUTHORITIES IN SUPPORT**
   | | **OF PLAINTIFF PNC BANK,**
18 | | **NATIONAL ASSOCIATION'S**
   |                   Plaintiff, | **APPLICATION FOR RIGHT TO**
19 | | **ATTACH ORDER AND ORDER**
   | | **FOR ISSUANCE OF WRIT OF**
20 |      vs. | **ATTACHMENT AGAINST**
   | | **DEFENDANT BRADY D. BUNTE**
21 | BRADY D. BUNTE, an individual, |
22 | |
   |                  Defendant. | [Declaration of James W. Clements
23 | |  filed concurrently herewith]
24 | | Date:      November 21, 2011
25 | | Time:      10:00 a.m.
   | | Courtroom: 10A
26 | |
   | | *Honorable Josephine Staton Tucker,*
27 | |  *United States District Judge*
28

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .......................................... 1

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS ..................................................................... 2

    A. The Warehousing Documents ................................................... 2

    B. The Guaranty and Amended Guaranty .................................... 4

    C. The Defaults and Indebtedness ................................................ 5

    D. Bunte's Liability Arises from the Conduct
       of a Trade, Business or Profession ......................................... 8

    E. Bunte's Obligations Are Not Secured by
       Real Property, the Property Sought to Be
       Attached Is Not Exempt, and PNC Seeks
       Attachment for a Proper Purpose ............................................ 8

III. LEGAL ARGUMENT ........................................................................... 9

    A. The Court Is Authorized to Issue the
       Requested Right to Attach Order and
       Writ of Attachment ................................................................. 9

    B. Bunte's Property Is Subject to Attachment
       and PNC Seeks Attachment for a Proper
       Purpose ................................................................................. 10

    C. PNCEF Has Established the Probable
       Validity of the Claim upon Which the
       Attachment Is Based ............................................................. 11

        1. Borrower Has Defaulted under
           the Terms of the Warehousing
           Documents ............................................................... 11

        2. Bunte Has Breached the Clear
           and Unambiguous Terms of
           the Guaranties .......................................................... 12

    D. PNC Is Entitled to Attachment
       as a Matter of Right ............................................................... 12

    E. Bunte Has Waived any Right to Require
       PNC to Proceed against Borrower or any
       Collateral before Attaching his Property ............................... 13

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

# TABLE OF CONTENTS

F.     PNC May Include its Estimated Costs and Attorneys' Fees in the Amount to Be Secured by the Attachment ........................................................... 13

IV.     CONCLUSION .......................................................................... 14

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

# TABLE OF AUTHORITIES

Page

**CASES**

Advance Transformer Co. v. Superior Court,
    44 Cal. App. 3d 127, 139-143 (1974)................................................ 10

American Guaranty Corp. v. Stoody,
    230 Cal. App. 2d 390, 394 (1964) .................................................. 13

Engelman v. Bookasta,
    264 Cal. App. 2d 915, 917 (1968) .................................................. 13

Halstead v. Halstead,
    72 Cal. App. 2d 832, 836 (1946) .................................................. 12

Kadison, Pfaelzer, Woodard, Quinn & Rossi v. Wilson,
    197 Cal. App. 3d 1, 4 (1987) ...................................................... 10


**STATUTES**

California Code of Civil Procedure § 481.010, *et seq.* ....................... 9, 14

California Code of Civil Procedure § 482.110 ................................... 13

California Code of Civil Procedure § 483.010(a)................................. 9

California Code of Civil Procedure § 483.010(b)................................ 10

California Code of Civil Procedure § 483.010(c)................................. 9

California Code of Civil Procedure § 484.090(a)(2) ........................... 11

California Code of Civil Procedure § 484.090(a)(3) ........................... 11

Federal Rule of Civil Procedure 64............................................... 9


**RULES**

Local Rule 55-3 ........................................................... 2, 9, 13, 14

Local Rule 7-3 ............................................................... 14

Levy, Small & Lallas
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3        Defendant Brady D. Bunte ("Bunte") is indebted to plaintiff PNC Bank,

4  National Association, successor by merger to National City Bank ("PNC" and in

5  some instances, "Bank"), in an amount in excess of $12.1 million on unsecured,

6  written guaranties (the "Guaranties") given by Bunte to guarantee payment and

7  performance by Trust One Mortgage Corporation ("Trust One" or "Borrower"), of

8  which Bunte was and is the principal, of its obligations to PNC.  Borrower has

9  defaulted on its obligations to PNC by, among other things, failing to pay the

10 balance due upon the July 31, 2010 maturity date of the line of credit outstanding

11 from PNC to Borrower in accordance with the terms of the Warehousing

12 Documents (as defined below) between them.  As a result, as of October 20, 2011,

13 the total amount owed by Borrower to PNC under the terms of the Warehousing

14 Documents, including principal and interest accrued through October 20, 2011, and

15 attorney's fees and expenses of collection and enforcement accrued through

16 September 30, 2011, but excluding interest and attorney's fees and expenses of

17 collection and enforcement accruing after those dates, and accrued and accruing

18 late fees and other charges due under the terms of the Warehousing Documents,

19 was $12,340,465.61 (consisting of $11,949,810.35 in principal due as of October

20 20, 2011, $288,769.72 in interest accrued through October 20, 2011, $100,442.75

21 in attorney's fees and $1,442.79 in expenses of collection and enforcement

22 incurred through September 30, 2011).  The total indebtedness due and owing to

23 PNC by Trust One and Bunte as Guarantor includes the foregoing sum of

24 $12,340,465.61, plus interest accruing from and after October 20, 2011 at the rate

25 of $1,242.56 per diem, attorney's fees and expenses of collection and enforcement

26 incurred after September 30, 2011, and previously accrued and thereafter accruing

27 late fees and other fees and charges due under the terms of the Warehousing

28 Documents and Guaranties (collectively, the "Indebtedness").

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

Bunte (who is Borrower's President and principal shareholder and executed the Warehousing Documents on its behalf) has breached his obligations under the Guaranties by failing to pay the Indebtedness or any part thereof to PNC, despite passage of the July 31, 2010 maturity date of Borrower's obligations under the Warehousing Documents.

PNC seeks a right to attach order and writ of attachment against Bunte based upon his Guaranties of Borrower's obligations to PNC. As set forth below, all of the requirements for the issuance of a right to attach order and writ of attachment against Bunte are satisfied. PNC has clearly established the probable validity of its claim for the fixed or readily ascertainable sum guaranteed by Bunte under written contracts, and seeks attachment for the proper purpose of securing recovery on its claim against Bunte for breach of guaranty.

Thus, PNC is entitled to issuance of the requested right to attach order and writ of attachment in the sum of $12,238,580.07 (principal plus interest), plus estimated costs of $5,000.00 and attorney's fees of $248,769.72 pursuant to the default schedule set forth in Local Rule 55-3.

## II.   STATEMENT OF FACTS

### A.   The Warehousing Documents

On or about December 10, 2007, PNC (then known as National City), on the one hand, and Trust One as Borrower and Bunte as Guarantor, on the other hand, entered into a written First Amended and Restated Warehousing Credit and Security Agreement (as amended or modified from time to time, the "Warehousing Agreement").[1] (Declaration of James W. Clements ["Clements Decl."], ¶ 7, Ex. "1".) Pursuant to the Warehousing Agreement, PNC agreed to make certain advances (the "Advances") to Trust One not to exceed $30,000,000 in the

---

[1] The Warehousing Agreement replaced, extended and renewed a written Warehousing Credit Agreement between National City's predecessor-in-interest, National City Bank of Kentucky, on the one hand, and Trust One, on the other hand, dated March 31, 2000, as amended or modified from time to time.

aggregate, and subject to the terms and conditions specified therein (the "Warehouse Line of Credit"), to be used by Trust One to make residential mortgage loans to its various borrowers (the "Mortgage Loans"), conditioned on, among other things, a guaranty by Bunte of Borrower's obligations to PNC. (Id.)

On or about December 10, 2007, in connection with the Warehouse Line of Credit established under the Warehousing Agreement, Trust One executed and delivered to PNC a written Amended and Restated Warehouse Promissory Note dated December 10, 2007 in the principal amount of $30,000,000 (as amended or modified from time to time, the "Note", and together with the Warehousing Agreement and all other documents executed by Borrower or Bank pursuant thereto or in connection therewith, as amended or modified from time, the "Warehousing Documents"). (Id., ¶ 8, Ex. "2".)

Subsequently, from time to time, PNC, on the one hand, and Trust One and Bunte, on the other hand, entered into written modifications to the Warehousing Agreement (the "Modifications" and each, a "Modification"), with respect to various provisions not at issue herein. (Id., ¶ 9.) To reflect each of the Modifications, Trust One made, executed and delivered to PNC an Amended and Restated Warehouse Promissory Note. (Id.) By the Modifications, among other things, the maximum principal amount of the Warehouse Line of Credit was modified, and the maturity date of Borrower's obligations under the Loan Documents was extended, from time to time. (Id.)

Pursuant to the sixth (and final) Modification to the Warehousing Agreement, made and entered into as of June 15, 2010 (the "Sixth Modification"), the maturity date of Borrower's obligations under the Warehousing Documents was extended to July 31, 2010, at which time the full amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Note became due and payable. (Id., ¶ 10, Ex. "3".) Pursuant to the Sixth Modification, Borrower executed and delivered to PNC a Sixth Amended and Restated Warehouse

1   Promissory Note in the principal amount of $20,000,000 (the "Sixth Amended
2   Note"). (Id., ¶ 10, Ex. "4".)

3       Pursuant to the Warehousing Documents, Trust One agreed, among other
4   things, to pay all costs and expenses incurred by PNC in connection with the
5   administration and enforcement of the Warehousing Agreement and collection of
6   the amounts due under the Warehousing Documents, including, without limitation,
7   reasonable attorney's fees. (Id., ¶ 11, Ex. "1", at §§ 8.6, 8.8.)

8       PNC has performed all of its obligations, if any, pursuant to the
9   Warehousing Documents, except to the extent performance was waived, excused
10  or discharged by reason of the conduct of Trust One and/or Bunte. (Id., ¶ 12.)

11  **B.    The Guaranty and Amended Guaranty**

12      On or about January 14, 2008, in order to induce PNC (then known as
13  National City) to extend or continue to extend credit to Trust One under the
14  Warehousing Documents, Bunte executed and delivered a written Guaranty
15  (Specific Debt) dated as of December 10, 2007 (the "Guaranty") to and for the
16  benefit of PNC. (Id., ¶ 13, Ex. "5".) Subsequently, on or about October 2, 2008,
17  in connection with the first Modification to the Warehousing Agreement, made and
18  entered into as of September 24, 2008 (by which the maximum principal amount of
19  the Warehouse Line of Credit was temporarily increased to $40,000,000), and in
20  order to induce PNC to extend or continue to extend credit to Trust One under the
21  Warehousing Documents, Bunte executed and delivered a written First Amended
22  and Restated Guaranty dated as of September 24, 2008 (the "Amended Guaranty")
23  to and for the benefit of PNC. (Id., ¶ 14, Ex. "6".)

24      The Guaranty and Amended Guaranty (the "Guaranties") provide, among
25  other things, that "[t]his Guaranty contains the entire guaranty agreement between
26  Guarantor and Bank with respect to all Indebtedness arising hereunder, and may be
27  in addition to other contracts of guaranty executed by the undersigned in favor of
28  Bank." (Id., ¶ 15, Exs. "5" & "6", at § 9.)

Pursuant to the Guaranties, Bunte absolutely and unconditionally guaranteed the prompt and punctual payment and performance of all obligations of Trust One under the Warehousing Documents, then existing or thereafter arising, contingent or absolute, whether arising at stated maturity, by acceleration or otherwise. (Id., ¶ 16, Exs. "5" & "6", at § 1.)  Moreover, Bunte agreed to pay PNC all costs, expenses and fees (including, without limitation, reasonable attorney's fees), accrued or incurred by PNC in endeavoring to collect the guaranteed debt and enforcing Bunte's guaranty obligations. (Id.)

In addition, pursuant to the Guaranties, Bunte agreed, among other things, that PNC may enforce Bunte's obligations thereunder without first resorting to Borrower, any collateral or security for guaranteed debt or any other remedy whatsoever. (Id., ¶ 17, Exs. "5" & "6", at § 2.)  Bunte also specifically waived, among other things, "any and all presentment, demand of payment, protest or notice of protest, notice of dishonor, notice of nonpayment or other default with respect to any obligation or liability covered hereunder, and all defenses in law or equity." (Id., ¶ 17, Exs. "5" & "6", at § 3.)

PNC has performed all of its obligations, if any, pursuant to the Guaranty and Amended Guaranty, except to the extent performance was waived, excused or discharged by reason of the conduct of Bunte. (Id., ¶ 18.)

**C.     The Defaults and Indebtedness**

Pursuant to Section 7.1(A) of the Warehousing Agreement, Trust One promised and agreed, among other things, to (a) pay all principal, interest, fees and other charges with respect to the Note as and when due and payable, (b) strictly observe and perform all covenants, agreements, terms, conditions and limitations contained in the Warehousing Documents, and (c) do all things necessary to prevent any forfeiture or impairment of PNC's rights thereunder. (Id., ¶ 19, Ex. "1", at § 7.1(A).)

Pursuant to Section 2.6(A) of the Warehousing Agreement,

> "On the Termination Date, without necessity of notice or demand, the Company shall pay the Bank the full amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Warehouse Note and all other Secured Obligations." (Id., ¶ 20, Ex. "1", at § 2.6(A).)

The "Termination Date" is defined in Section 1.1 of the Warehousing Agreement as the earlier of (i) the Maturity Date, or  (ii) the date the Bank declares this Agreement terminated . . . ." (Id., ¶ 21, Ex. "1", at § 1.1.)

As set forth above, pursuant to the Sixth Modification, the maturity date of Borrower's obligations under the Warehousing Documents was extended to July 31, 2010, at which time the full amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Note became due and payable.  (Id., ¶ 22, Exs. "3"-"4".)  No further extensions of the maturity date were granted by PNC. (Id., ¶ 22.)   Therefore, on July 31, 2010, the full amount of the outstanding principal balance of, and all accrued but unpaid interest on, the Note and all other obligations under the Warehousing Documents became due and payable immediately. (Id.)

Pursuant to Section 8.1(B) of the Warehousing Agreement, an event of default occurs if Trust One fails to make any payment of principal, interest, fees or other amounts due and owing to PNC under the Warehousing Documents on or before the date due, and such failure continues for a period of ten (10) calendar days.  (Id., ¶ 23, Ex. "1", at § 8.1(B).  Pursuant to Section 8.3, upon an event of default specified in Section 8.1(B), the principal of, and all interest on, the Note and all other liabilities under the Warehousing Documents shall become due and payable concurrently therewith without notice of presentment, protest, notice of default, notice of acceleration of or intention to accelerate or other notice of any kind, all of which Borrower thereby expressly waived, and PNC may exercise any

1   and all of the rights and remedies set forth in Section 8.3 and any other remedies

2   provided in the Warehousing Documents.  (Clements Decl., ¶ 24, Ex. "1", at §

3   8.3.)

4        An event of default has occurred pursuant to Section 8.1(B) of the

5   Warehousing Agreement in that Trust One has failed to pay PNC the full amount

6   of the outstanding principal balance of, and all accrued but unpaid interest on, the

7   Note and all other obligations under the Warehousing Documents, on or before the

8   July 31, 2010 maturity date, and such failure has continued for a period of more

9   than ten (10) calendar days (the "Default").  (Id., ¶ 25.)  Accordingly, PNC may

10  exercise any and all of the rights and remedies set forth in Section 8.3 of the

11  Warehousing Agreement and any other remedies provided in the Warehousing

12  Documents.  (Id.)

13       As of October 20, 2011, the total amount of the indebtedness due and owing

14  to PNC by Trust One pursuant to the Warehousing Documents, and by Bunte

15  pursuant to his guaranty obligations, including principal and interest accrued

16  through October 20, 2011, and attorney's fees and expenses of collection and

17  enforcement incurred through September 30, 2011, but excluding interest accruing

18  after October 20, 2011, and attorney's fees and expenses of collection and

19  enforcement incurred after September 30, 2011, was $12,340,465.61 (consisting of

20  $11,949,810.35 in principal due as of October 20, 2011, $288,769.72 in interest

21  accrued through October 20, 2011, $100,442.75 in attorney's fees and $1,442.79 in

22  expenses of collection and enforcement incurred through September 30, 2011).

23  The total indebtedness due and owing to PNC by Trust One and Bunte as

24  Guarantor includes the foregoing sum of $12,340,465.61, plus interest accruing

25  from and after October 20, 2011 at the rate of $1,242.56 per diem, attorney's fees

26  and expenses of collection and enforcement incurred after September 30, 2011, and

27  previously accrued and thereafter accruing late fees and other fees and charges due

28

under the terms of the Warehousing Documents and Guaranties (collectively, the "Indebtedness"). (Id.)

As of the date hereof, Trust One and Bunte, and each of them, have failed to pay the Indebtedness, or any portion thereof, to PNC, in violation of their respective obligations to PNC. (Id., ¶ 27.)

### D.   Bunte's Liability Arises from the Conduct of a Trade, Business or Profession

Bunte's liability to PNC arises from Bunte's involvement in Borrower's business.  Bunte is now, and at all times during the existence of the financing relationship between Bank and Trust One was, the President, Secretary, Treasurer, a director and the principal shareholder of Borrower.  (Id., ¶ 28.)  During the course of the financing relationship between Bank and Borrower, Bunte was, and currently is, involved on a day-to-day basis in Borrower's business.  (Id.) Moreover, the Warehousing Agreement and all the Modifications thereto were executed by Bunte in his capacity as Borrower's President, with authority to make decisions on its behalf, including decisions related to the financing relationship with Bank, as well as in his capacity as Guarantor of Borrower's obligations thereunder. (Id.)

The financing provided by PNC to Trust One was to be used by Borrower for its business needs (namely, to make the Mortgage Loans), and not to be used by Bunte for any personal, family or household purposes. (Id., ¶ 29.)

### E.   Bunte's Obligations Are Not Secured by Real Property, the Property Sought to Be Attached Is Not Exempt, and PNC Seeks Attachment for a Proper Purpose

The obligations owing to PNC by Bunte are not secured by real property, and the property of Bunte that PNC seeks to attach is not exempt from attachment. (Id., ¶¶ 30-31.)

PNC seeks attachment in this matter solely for the purpose of securing the amounts owing to PNC by Bunte as Guarantor of Trust's One's obligations to PNC under the Warehousing Documents.  (Id., ¶ 32.)

## III.   LEGAL ARGUMENT

### A.   The Court Is Authorized to Issue the Requested Right to Attach Order and Writ of Attachment

Under Federal Rule of Civil Procedure 64, this Court refers to California law in determining whether an attachment is proper.  California's attachment law is set forth at Sections 481.010, *et seq.*, of the California Code of Civil Procedure ("CCP").  The cases in which an attachment is authorized are specified in Section 483.010(a), which provides,

> "(a)   Except as otherwise provided by statute, an attachment may be issued only in an action on a claim or claims for money, each of which is based upon a contract, express or implied, where the total amount of the claim or claims is a fixed or readily ascertainable amount not less than five hundred dollars ($500) exclusive of costs, interest, and attorneys' fees."

PNC's claim for breach of written guaranty against Bunte satisfies all of the requirements of Section 483.010(a).  PNC's claim is for money and the total amount of PNC's claim is in the fixed amount of $12,238,580.07 as of October 20, 2011 (including principal and interest accrued as of October 20, 2011), plus estimated costs of $5,000.00 and attorneys' fees of $248,371.60 pursuant to the default schedule set forth in Local Rule 55-3.  PNC's claim is based upon the Guaranties, which are express contracts.

Finally, PNC meets the requirement of CCP section 483.010(c) that the obligation of an individual defendant arise out of that person's conduct of a trade, business or profession.  "Section 483.010, subdivision (c) prohibits a prejudgment attachment against a defendant who is a natural person unless the claim arises out

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

9

1    of a trade, business, or profession." <u>Kadison, Pfaelzer, Woodard, Quinn & Rossi</u>
2    <u>v. Wilson</u>, 197 Cal. App. 3d 1, 4 (1987).   A purpose of the attachment statutes
3    (including the "trade, business, or profession" requirement) is to "confine
4    attachments to commercial situations and to prohibit them in consumer
5    transactions."  <u>Id.</u>; see <u>Advance Transformer Co. v. Superior Court</u>, 44 Cal. App.
6    3d 127, 139-143 (1974).  The terms "trade, business, or profession" "may be found
7    to encompass almost any activity engaged in for profit with 'frequency and
8    continuity'."  <u>See</u> <u>Advance Transformer</u>, 44 Cal. App. 3d at 139.

9            As set forth in the Clements Declaration and Section II.D, *supra*, Bunte is
10   now, and at all times during the existence of the financing relationship between
11   PNC and Trust One was, the President, Secretary, Treasurer, a director and the
12   principal shareholder of Trust One. (Clements Decl., ¶ 28.)  During the course of
13   the financing relationship between PNC and Trust One, Bunte was, and currently
14   is, involved on a day-to-day basis in Trust One's business.  (<u>Id.</u>)  Moreover, the
15   Warehousing Agreement and all the Modifications thereto were executed by Bunte
16   in his capacity as Borrower's President, with authority to make decisions on its
17   behalf, including decisions related to the financing relationship with PNC, as well
18   as in his capacity as Guarantor of Borrower's obligations thereunder.  (<u>Id.</u>)  Thus,
19   PNC's claim against Bunte clearly arises out of his conduct of a trade, business or
20   profession – *i.e.*, the Borrower's businesses – in which he was engaged for profit.

21          Furthermore, the financing provided by PNC to Borrower was to be used by
22   Borrower for its business needs (namely, to make the Mortgage Loans), and not to
23   be used by Bunte for any personal, family or household purposes. (<u>Id.</u>, ¶ 29.)

24   **B.     Bunte's Property Is Subject to Attachment and PNC Seeks**
25   **        Attachment for a Proper Purpose**

26          CCP Section 483.010(b) requires that the claim upon which a writ of
27   attachment is sought not be secured by real property.  The obligations owing to
28   PNC by Bunte are not secured by real property.  (Clements Decl., ¶ 30).   In

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

10

1  addition, the property of Bunte that PNC seeks to attach is not exempt from

2  attachment. (Id., ¶ 31.)

3     CCP Section 484.090(a)(3) requires that "[t]he attachment is not sought for a

4  purpose other than the recovery on the claim upon which the attachment is based."

5  PNC seeks attachment in this matter solely for the purpose of securing the amounts

6  owing to PNC by Bunte as Guarantor of Trust's One's obligations to PNC under

7  the Warehousing Documents. (Id., ¶ 32.)

8     **C.     PNCEF Has Established the Probable Validity of the Claim upon**

9            **Which the Attachment Is Based**

10    CCP section 484.090(a)(2) requires that a party seeking an attachment

11  "establish[ ] the probable validity of the claim upon which the attachment is based"

12  prior to the issuance of a right to attach order.  The probable validity of the claim

13  against Guarantors in this case is clearly established by the Warehousing

14  Documents, the Guaranties, and the Clements Declaration.

15     **1.     Borrower Has Defaulted under the Terms of the**

16            **Warehousing Documents**

17    As set forth in Section II.C, *supra*, and the Clements Declaration, Borrower

18  has failed to perform its obligations under the Warehousing Documents by failing

19  to pay all principal and accrued interest due under the Warehousing Documents by

20  or within ten (10) calendar days after the July 31, 2010 maturity date, and has

21  failed to pay the Indebtedness, or any portion thereof, to PNC.

22    As a result of Borrower's defaults, as of October 20, 2011, the indebtedness

23  due and owing to PNC by Borrower to PNC under the Warehousing Documents,

24  and by Bunte under the Guaranties, was in the amount of $12,340,465.61

25  excluding interest accruing from and after October 20, 2011, attorney's fees and

26  expenses of collection and enforcement incurred after September 30, 2011, and

27  previously accrued and thereafter accruing late fees and other fees and charges due

28

1    under the terms of the Warehousing Documents and Guaranties.  (Clements Decl.,

2    ¶ 26.)

### 2.    Bunte Has Breached the Clear and Unambiguous Terms of the Guaranties

As set forth in Sections II.B and C, *supra*, and the Clements Declaration, by the Guaranties, Bunte agreed to, and did, absolutely and unconditionally guaranty all obligations and Indebtedness of Borrower to PNC under the Warehousing Documents.  PNC has performed all of its obligations, if any, pursuant to the Guaranties, except to the extent performance was waived, excused or discharged by reason of the conduct of defendants herein.  Bunte has failed to pay the amounts due and owing to PNC from Borrower and therefore has defaulted under the terms of his Guaranties.

### D.    PNC Is Entitled to Attachment as a Matter of Right

In <u>Halstead v. Halstead</u>, 72 Cal. App. 2d 832, 836 (1946), the court held that a plaintiff who satisfies the statutory requirements, and makes the statutory showing, is entitled to a writ of attachment <u>as a matter of right</u>:

> "Under the given circumstances, these writs issued, not as pre-cepts emanating from the exercise of judicial favor or discre-tion, but as writs of right.  The usual and main purpose of an attachment is to secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action.  As early as 1851 the second Legislature assembled in California saw fit to enact into law, and to grant to unsecured creditors whose demands arose from contracts, the provisional and summary remedy known as 'attachment' proceedings in order to insure that the ends of successful litigation should not be fruitlessly pursued or frustrated."

This principle is equally applicable to a right to attach order.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

12

### E.   Bunte Has Waived any Right to Require PNC to Proceed against Borrower or any Collateral before Attaching his Property

By the Guaranties, Bunte agreed, among other things, that PNC may enforce Bunte's obligations thereunder without first resorting to Borrower, any collateral or security for guaranteed debt or any other remedy whatsoever.  (Clements Decl., ¶ 17, Exs. "5" & "6", at § 2.)   In other words, consistent with California public policy, Bunte waived his right to require PNC to pursue any security interests (or any remedies against Borrower) before enforcing the Guaranties. See Engelman v. Bookasta, 264 Cal. App. 2d 915, 917 (1968); American Guaranty Corp. v. Stoody, 230 Cal. App. 2d 390, 394 (1964).   Thus, a right to attach order and writ of attachment against Bunte may properly be issued, regardless of any other remedies PNC may have against Borrower or its assets.

### F.   PNC May Include its Estimated Costs and Attorneys' Fees in the Amount to Be Secured by the Attachment

Pursuant to CCP Section 482.110, PNC may include in its Application for a right to attach order writ of attachment, in addition to the principal indebtedness, estimates of its costs and attorney's fees in this matter, and the Court may include these costs and fees in the amount to be secured by the attachment.  As indicated in the Application, and for purposes of this Application, PNC's estimated costs are $5,000.00 and its estimated attorney's fees, calculated in accordance with the schedule for default cases set forth in this Court's Local Rule 55-3, based on a claim of $12,238,580.07, are $248,371.60.[2]   Therefore, as indicated in the Application, the total amount to be secured by the attachment sought by PNC is $12,491,951.67.

---

[2]  PNC expressly reserves the right to seek additional costs and/or fees when it obtains judgment herein.

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

1

## IV.   CONCLUSION

PNC has established that the sum of at least $12,238,580.07, plus costs and fees, is due to it from Bunte, and that the requirements of CCP Section 481.010, *et seq.*, have been met.  Therefore, PNC is entitled to, and respectfully requests that the Court issue, a right to attach order and writ of attachment against Bunte in the sum of $12,491,951.67, including estimated costs and attorney's fees pursuant to the default schedule set forth in Local Rule 55-3.  PNC attempted to meet and confer with counsel for Bunte on October 10, 2011 pursuant to Local Rule 7-3.

DATED:   October 19, 2011

LEO D. PLOTKIN
JOHN P. MERTENS
LEVY, SMALL & LALLAS
A Partnership Including Professional Corporations


By:_____ /s/ John P. Mertens_____
        JOHN P. MERTENS

Attorneys for Plaintiff
PNC BANK, NATIONAL
ASSOCIATION, successor
by merger to National City Bank

26825-2

LEVY, SMALL & LALLAS
A PARTNERSHIP INCLUDING
PROFESSIONAL CORPORATIONS
815 MORAGA DRIVE
LOS ANGELES, CA 90049

14

1

## PROOF OF SERVICE

2    *STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:*

3          I am employed in the County of Los Angeles, State of California.  I am over
     the age of 18 and not a party to the within action; my business address is 815
4    Moraga Drive, Los Angeles, California  90049.

5          On October 20, 2011, I served the foregoing document entitled
     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
6    **PLAINTIFF PNC BANK, NATIONAL ASSOCIATION'S APPLICATION**
     **FOR RIGHT OT ATTACH ORDER AND ORDER FOR ISSUANCE OF**
7    **WRIT OF ATTACHMENT AGAINST DEFENDANT BRADY D. BUNTE** on
8    the interested parties in this action by placing a true copy thereof in sealed
     envelopes addressed as follows:
9

10                    ***See Attached Service List***

11    ☒      By Service of Court via Notice of Electronic Filing ("NEF") Pursuant to
12           controlling General Order(s), the foregoing document will be served by the
             Court via NEF and hyperlink to the document.  I checked the CM/ECF
13           docket for this action and determined that the following person(s) are on the
14           Electronic Mail Notice List to receive NEF transmission at the email
             addresses indicated on the attached service list.
15

16    ☒      **(Federal)** I declare that I am employed in the office of a member of the Bar
             of this Court at whose direction the service was made.  I declare under
17           penalty of perjury under the laws of the United States of America that the
18           above is true and correct.

19    Executed October 20, 2011, at Los Angeles, California.

20

21                                        ____/s/ Heidi Gray____
22                                        Heidi Gray

23

24

25

26

27

28

                                                                              19

## SERVICE LIST

**<u>Via Notice of Electronic Filing</u>**
John H. Kay, Esq.
Shields Law Offices
1920 Main Street, Suite 1080
Irvine, California 92614
Telephone: (949) 724-7900
Facsimile: (949) 724-7905
Email: john@shieldslawoffices.com

*Attorney for Defendant, TRUST ONE*
*MORTGAGE CORPORATION*

-2-